# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MOSES MCCORMICK, et al., : | |
| : | Case No. 2:19-cv-03329 |
| **Plaintiffs,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | Magistrate Judge Jolson |
| FRANKLIN COUNTY COURT OF COMMON : | |
| PLEAS, DOMESTIC DIVISION, et al. : | |
| : | |
| **Defendants.** : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Hsiu Chen-Lu's Motion for Judgment on the Pleadings. Doc. 146. The matter is fully briefed, and the Court will resolve the Motion without oral argument. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion [#146].

### II. BACKGROUND

Plaintiffs Moses and Mark McCormick filed a 256-page Complaint, alleging that several private parties, state courts, agencies, and their employees conspired against them in violation of their constitutional rights, in connection with Moses McCormick's divorce proceedings. Plaintiffs bring this action under 42 U.S.C. § 1983 and the federal RICO statute, codified at 18 U.S.C. § 1962.[1] Many of Plaintiffs' allegations are difficult to follow, but with respect to Defendant Hsiu-Chen Lu, Plaintiffs raise the following claims:

---

[1] The § 1983 claim does not apply to Defendant Lu.

Defendant Lu is Plaintiff Moses McCormick's ex or soon-to-be ex-wife. Plaintiffs allege that Defendant Lu attempted to separate from Moses McCormick as a way to "personally immobilize him from public work," "deprive him of assets that would be due him under the provisions of state law," and limit his "visitation with his children." When Mr. McCormick refused to sign marriage dissolution papers, Plaintiffs contend that Defendant Lu, in retaliation, filed a false complaint and committed perjury by stating Mr. McCormick "had an affair, was abusive and cruel, and neglected his [marital] dut[ies]." In addition, Plaintiffs assert that Defendant Lu acted in concert with state officials to thwart Mr. McCormick's civil lawsuit against her for concealing at least $300,000 worth of marital property. Plaintiffs also maintain that Defendant Lu "bribed the Franklin County Court of Common Pleas directly and indirectly to gain favorable rulings, and to receive the rulings consistent with the terms and conditions set forth in the dissolution papers." Finally, Plaintiffs state that Defendant Lu's actions were "an attempt on the life of Plaintiff Moses McCormick due to him . . . being at 'high risk' for a stroke." This claim is apparently connected to Defendant Lu's act of cancelling Mr. McCormick's health insurance.

Doc. 1 at 178-191.

### III. STANDARD OF REVIEW

Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed using the same standard applicable to a motion to dismiss under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *Southern Ohio Bank v. Merrill Lynch,*

2

*Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The Court need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). Rather, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskavan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### IV. ANALYSIS

Defendant Lu moves for judgment on the pleadings on four grounds: (1) the Court lacks subject-matter jurisdiction; (2) Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine; (3) Plaintiffs fail to state a cognizable RICO claim against Defendant Lu; and (4) Plaintiffs' claims are frivolous and intended to harass Defendant Lu. The Court will address each of Defendant's arguments, in turn, below.

#### A. Whether the Court has Subject-Matter Jurisdiction

First, Defendant Lu moves for judgment on the pleadings, arguing the Court lacks subject matter jurisdiction over Plaintiffs' claims because they all arise out of the couple's divorce proceedings. Defendant's argument is based on her interpretation of the domestic-relations exception to federal jurisdiction.

The "domestic-relations exception" deprives federal courts of jurisdiction over cases "involving the issuance of a divorce, alimony, or child custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)). While this jurisdictional bar typically applies to cases involving diversity jurisdiction, the Sixth Circuit has extended its reach to cases involving a federal question but whose substance are domestic relations. *Chambers v. Michigan*, 473 F. App'x 477, 479 (6th Cir. 2012) ("Even

3

when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court.") (citing *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981)).

Importantly, the domestic-relations exception must be applied narrowly, as federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Chevalier*, 803 F.3d at 795 (quoting *Marshall v. Marshall*, 547 U.S. 293, 298-99 (2006)). To that end, "[t]he domestic-relations exception to federal . . . jurisdiction does not apply when the parties do not ask the federal court to perform these status-related functions—issuing a divorce, alimony, or child custody decree—even if the matter involves married or once-married parties." *Id.* at 797. This dividing line, however, is not always clear. *See, e.g., Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 2015), *abrogated on other grounds by Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006), ("True, the remedy Catz seeks—a declaration that the Pima County divorce decree is void as a violation of due process—would seem to directly impact the marriage status and rights between the husband Plaintiff and his wife. On the other hand, if the divorce judgment were unconstitutionally obtained, it should be regarded as a nullity, and any decree so stating would change nothing at all. Further, the declaration Catz seeks would not itself address the merits, or ultimately dispose, of Chalker's divorce petition; she would be free to litigate her marital status in state court.") (internal quotations and citation omitted); *Alexander v. Rosen*, 804 F.3d 1203, 1206 (6th Cir. 2015) ("It is true that Alexander asks us to abate[] his child support payments. But just as Catz's request that we nullify his divorce did not prevent us from taking jurisdiction, Alexander's desired relief does not alter the character of his case, which presents standard questions of federal conspiracy and civil rights law.") (internal quotations and citation omitted); *cf. Wiesmueller v. Oliver*, 2019 WL 2501561, at *5 (M.D. Tenn. June 17, 2019) ("Despite

4

Mr. Wiesmueller's labeling of his claims as such, this is simply not a RICO action. Rather, as his email correspondence with Mrs. Wiesmueller and his complaint make plain, Mr. Wiesmueller has invoked that statute in an effort to secure this Court's jurisdiction to alter the outcome of his divorce."). Ultimately, the critical question is whether exercising jurisdiction over a case would require the Court to apply state domestic relations law. If so, the Court should decline jurisdiction. *See Catz*, 142 F.3d at 291 ("Finally, Catz is not asking the district court to involve itself in the sort of questions attendant to domestic relations that are assumed to be within the special expertise of state courts[.]"); *Alexander*, 804 F.3d at 1205-06 ("[Plaintiff] does not request that we issue a divorce, alimony, or child custody decree or that we modify or interpret an existing decree. He instead requests that we apply federal law to determine whether the officials overseeing his child support case conspired against him—an inquiry that does not require us to apply Michigan child custody law, question the state's calculation of child support payments, or otherwise address the merits of the underlying dispute."); *cf. Wiesmueller*, 2019 WL 2501561 at *5 ("Further, calculation of Mr. Wiesmueller's requested damages would require this Court to apply state law to determine his marital share of the accrued equity, which is exactly the kind of endeavor that the domestic relations exception was designed to prevent.").

Here, the domestic-relations exception does not strip this Court of jurisdiction over Plaintiffs' federal RICO action. Importantly, Plaintiffs do not request that the Court nullify Mr. McCormick and Ms. Lu's divorce. Plaintiffs do not seek an order requiring Ms. Lu to pay Mr. McCormick a regular allowance, i.e., alimony. Nor do Plaintiffs seek an order to modify an existing child custody decree. Rather, Plaintiffs ask the Court to adjudicate whether Defendant Lu engaged in a conspiracy with other private and governmental actors to, among other things, "immobilize Mr. McCormick from public work" and "deprive him of assets." For these tort-

5

related injuries, Plaintiffs seek monetary damages based solely on the application of federal law. The domestic-relations exception, therefore, does not preclude Plaintiffs from seeking redress in federal court for their alleged injuries. *See Chevalier*, 803 F.3d at 798 ("Because none of the claims or remedies requires a federal court to dissolve the marriage, award alimony, monitor Chevalier's need for maintenance and support, or enforce Barnhart's compliance with a related court order, Chevalier's claims are not subject to the domestic-relations exception[.]").

### B. Whether Plaintiffs' Claims are Barred by the *Rooker-Feldman* Doctrine

Alternatively, Defendant Lu moves for judgment on the pleadings, arguing Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine stems from two Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). 28 U.S.C. § 1257(a) is designed "to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking review of a state-court decision." *Kovacic v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010). Specifically, the statute provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." *Id.* at 308-09. "The *Rooker-Feldman* doctrine, as it has become known, is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts." *Id.* at 309.

In *Kovacic*, the Sixth Circuit held that the *Rooker-Feldman* doctrine did not bar a § 1983 claim brought by two children against the Department of Family Services, where the children alleged that the agency's unconstitutional conduct led to a juvenile court decision removing them

6

from their mother's custody. *Id.* at 310. In distinguishing between "plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies— and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply*,*" the Sixth Circuit stressed that the children's claims did not "seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus[ed] on the conduct of Family Services and of the social workers *that led up to* the juvenile court's decision to award temporary custody to the County." *Id.* Similarly, in *Brokaw v. Weaver*, the Seventh Circuit held that a plaintiff's civil suit against various state actors and agencies following a state court decision removing her from her parents' home was not barred by the *Rooker-Feldman* doctrine. 305 F.3d 660, 665 (7th Cir. 2002). In reaching that decision, the court emphasized that plaintiff was "not merely claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, [plaintiff was] alleging that the people involved in the decision to forcibly remove her from her home and her parents and subject her to the custody of the IDCFS violated her constitutional rights, independently of the state court decision." *Id.*

Here, as in *Kovacic* and *Brokaw*, Plaintiffs' claims against Defendant Lu do not seek to reverse the decision of any state court. To the contrary, Plaintiffs seek monetary damages for an alleged conspiracy amongst various actors who happened to have some direct or indirect involvement with Moses McCormick's divorce proceedings. *See Alexander*, 804 F.3d at 1206-07(6th Cir. 2015) ("That doctrine does not apply here, because [Plaintiff's] alleged injury did not emerge from the state court *judgment*. He does not appeal the state court's child support decision; he challenges the conduct of the individuals who happened to participate in that decision."). A favorable ruling in this case would not overturn any prior decisions of the state courts. Plaintiffs'

7

federal RICO claim, therefore, stands on its own. *See Kovacic*, 606 F.3d at 309 ("The inquiry [focuses on] the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, *such as a third party's actions*, then the plaintiff asserts an independent claim. . . . To the extent that Defendants argue that these claims, even though they do not assert injury from the state court judgments, are 'inextricably intertwined' with those judgments so as to fall within the reach of *Rooker-Feldman*, that argument must fail.") (quoting *McCormick v. Braverman*, 451 F.3d 382, at 393-94 (6th Cir. 2006)). Accordingly, the *Rooker-Feldman* doctrine does not pose a bar to Plaintiffs' civil RICO claim.

### C. Whether Plaintiffs' Fail to State a Cognizable Claim under the RICO Statute

Next, Defendant Lu asserts that Plaintiffs fail to state a claim upon which relief can be granted. First, Defendant Lu maintains that Plaintiffs' Complaint fails to identify which section of the RICO statute they are invoking. Second, Defendant Lu contends that Plaintiffs failed to set forth with particularity the elements and facts supporting a RICO claim. Finally, Defendant Lu argues that Plaintiffs fail to establish a cognizable injury stemming from her alleged misconduct.

To prevail on a civil action under the federal Racketeer Influenced and Corrupt Organizations Act, a plaintiff must prove the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bradley v. Miller*, 96 F. Supp. 3d 753, 787 (S.D. Ohio 2015) (quoting *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013)). Racketeering activity, or predicate acts, "consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(B)." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). Here, Plaintiffs' RICO claim against Defendant Lu is

8

predicated on at least nine underlying criminal allegations: (1) Bribery of Public Officials and Witnesses, 18 U.S.C. § 201; Theft or Embezzlement from Employee Benefit Plan, 18 U.S.C. § 664; (3) Frauds and Swindles ("Mail Fraud"), 18 U.S.C. § 1341; (4) Fraud by Wire, Radio, or Television ("Wire Fraud"), 18 U.S.C. § 1343; (5) Obstruction of Proceedings before Departments, Agencies, and Committees, 18 U.S.C. § 1505; (6) Hobbs Act Extortion, 18 U.S.C. § 1951; (7) Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, 18 U.S.C. § 1952; (8) Laundering of Monetary Instruments, 18 U.S.C. § 1956(i); and (9) Retaliation, 18 U.S.C. § 1513(e). Against this backdrop, the Court will turn to each of Defendant Lu's arguments.

1. Whether Plaintiffs Invoked a Specific Section of the RICO Statute

Defendant Lu argues that Plaintiffs' Complaint should be dismissed because it fails to identify which section of the RICO statute Plaintiffs are invoking. Contrary to Defendant Lu's contention, however, a review of the Complaint shows Plaintiffs invoke three different sections of the RICO statute: 18 U.S.C. § 1962(B) against Defendant Lu and others, 18 U.S.C. § 1962(C) against all Defendants, and 18 U.S.C. § 1962(D) against all Defendants.[2] *See* Doc. 1 at 251-253.

---

[2] 18 U.S.C. § 1962(B):

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(C):

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(D):

> It shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section.

9

It thus follows that Plaintiffs have identified which section(s) of the statute they bring their claims under -- all three.

### 2. Whether Plaintiffs Pled a RICO Claim with Sufficient Particularity

Next, Defendant Lu asserts that Plaintiffs' Complaint should be dismissed because Plaintiffs failed to plead a RICO claim with sufficient facts and particularity. Specifically, Defendant Lu argues that two of the alleged predicate offenses -- Mail Fraud, 18 U.S.C. § 1341, and Wire Fraud, 18 U.S.C. § 1343 -- are based on fraud and, therefore, must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), Plaintiffs were required to plead the "time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud[.]" *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

Here, Plaintiffs' Complaint fails to set forth any facts demonstrating Defendant Lu used the postal service, or other interstate mail carrier, to carry out fraudulent acts, such as to constitute mail fraud under 18 U.S.C. § 1341. Similarly, Plaintiffs' wire fraud claim against Defendant Lu under 18 U.S.C. § 1343 fails to set forth with any particularity facts that establish Defendant Lu violated the statute. There was only one allegation against Defendant Lu involving the use of electronic transmittal[3]:

> Defendant Hsiu-Chen Lu sent emails to Plaintiff Moses McCormick on June 16th, 2016 two days after she filed her false divorce complaint and stated that the children really wanted to see him and she wants him to pick them up and spend time with him because its

---

[3] In another area of the Complaint pertaining to Defendant Stacey Gilbert-Osborne, Plaintiffs claim that Defendant Lu was advised to call the Akron Police Department and direct them to Plaintiff Moses McCormick's mother's home for the purpose of having their children "unconstitutionally removed" from his care. *See* Doc. 1 at 197. But even assuming this act was intended to serve as a basis for the wire fraud allegation against Defendant Lu, Plaintiffs' Complaint fails to set forth with particularity, as required by Rule 9(b), when this call took place or what Defendant Lu may have said over the phone to the police.

10

> father's day. This act is inconsistent with her allegation of him being abusive and cruel which proves inconsistency in her divorce complaint.

Doc. 1 at 186. But these emails, which Plaintiffs concede do not support Defendant Lu's alleged lies, were not sent in furtherance of any fraudulent scheme. *See United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994) ("To support a conviction for wire fraud, 18 U.S.C. § 1343, the government must prove: (1) the existence of a scheme to defraud, (2) use of wire communications *in furtherance* of the scheme, and (3) that the scheme was intended to deprive a victim of money and property.") (emphasis added). Accordingly, to the extent Plaintiffs' RICO claim against Defendant Lu is based on the predicate crimes of mail or wire fraud under 19 U.S.C. §§ 1341 and 1343, this claim is **DISMISSED**.[4]

### 3. Whether Plaintiffs Asserted a Cognizable Injury

Last, Defendant Lu argues that Plaintiffs' Complaint should be dismissed because it fails to identify an injury to Plaintiffs' business or property resulting from Defendant Lu's alleged misconduct. This argument, however, is unpersuasive.

Plaintiffs allege that Defendant Lu conspired with other actors to, among other things, file false claims, lie in court, bribe court officials, and conceal financial accounts to deprive Plaintiff Moses McCormick of $300,000 in assets and immobilize him from pursuing public work. *See Alexander*, 804 F.3d at 1206 ("The underlying substance of this case—the fact that it happens to arise in the domestic relations context—does not affect our analysis of whether the defendants engaged in the charges here: racketeering and conspiracy."). These allegations suffice to establish

---

[4] Defendant Lu did not raise a specific challenge to the other predicate crimes listed in Plaintiffs' Complaint. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

that Defendant Lu acted in concert with others and was the proximate cause of Plaintiffs' injuries. *See Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 889 (6th Cir. 2000) (holding that to sustain a civil RICO action a "plaintiff must plead and prove *proximate* causation.") (internal quotations omitted). Moreover, no matter how implausible Plaintiffs' factual allegations appear to be, the Court cannot dismiss the Complaint simply because it does not believe that the claims therein are true. *See Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.").

### D.  Whether Plaintiffs' Claims can be Dismissed as Frivolous

Finally, Defendant Lu moves for judgment on the pleadings, arguing Plaintiffs' claims against her are frivolous. But while Plaintiffs' factual allegations may be exaggerated, at this stage, these allegations must be accepted as true. *See Winget*, 510 F.3d at 581. Accordingly, the Court will not dismiss Plaintiffs' claims on this basis.

As a final note, Plaintiffs should be aware that they will not be afforded the same level of deference at the summary judgment stage with respect to their factual allegations. Indeed, Plaintiffs will be required to support their allegations with actual evidence. A failure to do so will result in the dismissal of this case with prejudice.

### V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Lu's Motion to Dismiss [#146]. To the extent Plaintiffs alleged that Defendant Lu's participation in the RICO scheme is predicated on acts of mail or wire fraud, those claims are **DISMISSED**. The other alleged predicate crimes, however, will continue to serve as a basis for the federal RICO claim.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 28, 2020**